Thank you. May it please the court. My name is Scott Stempson. I'm with the law firm of Sills, Cummins & Gross in New York City. We represent the appellant pay logger, also known as IPT. This dispute started back in 2014 when the city of New Orleans sought a new contract for its auto-related debt collection, including parking boots. Professional Account Management, also known as PAM, bid for that. I think we understand the history of this case, so why don't we go to the issues. It's a little unusual. I mean, usually we'll see these transfer questions come up in the motions, and this is kind of an unusual posture, right? So why don't you speak to that. Yeah, well, it's unusual posture because of the court court-sized jurisdiction, not because of mandamus, because of the grant of a preliminary injunction. Here you have a district court in New Orleans enjoining a sister court in New Jersey, which had different parties and different infringement allegations. That's how we get here. Were there different infringement allegations? As I understand it, all the infringement allegations that we're talking about all occurred in New Orleans as part of this contract, in which what the district court referred to one of the parties as a puppeteer, I think. Yes, I understand. And the other party as the actor. So what's the difference? Well, there is a difference. Actually, the two infringement allegations, I think, are best addressed, and there are two different buckets, really. There's the New Orleans bucket, which you just addressed, Your Honor. Then there's the bucket of anything else. With regard to New Orleans, in the district court, I recognize this in its footnote 3. The first thing that comes out is there's a question. What's actually happening in New Orleans? And SP has recently been saying that they're doing all the steps. But if you look at the record here, including our cease and desist letter to Pam, we actually did an investigation, and it was Pam that was doing this. Part of these processes... Well, for the part in New Orleans, yes, that's correct. In terms of the infringement, actually. Yes, for the New Orleans bucket, yes. Everything that's actually happening is happening in New Orleans. But if you look at our cease and desist letter, which is Appendix 188-89, we actually did an investigation before we told them they had to stop infringing. And one of the things we found out was that the payment of the fine and the release of the boot, which are two things in all these patent claims, they had a number for that, and that number was a number for Pam, not SP. So SP is trying to tell us that they do everything in New Orleans. I just don't think that's factually accurate. You also have the Robinson Declaration, which they submitted, which says that Pam is involved. And as we told the district court, SP actually told us they did not do the deposit steps. So here's the difference between the two litigations and why New Jersey should go ahead. It doesn't matter what's happening in New Orleans. It doesn't matter how they're slicing and dicing these process steps. It doesn't make any difference if the city's booting some cars or Pam's doing it or SP. It doesn't matter who's doing what steps. It's covered in New Jersey because Pam is responsible for all of it. If Pam is doing some of the steps, we've got them. If SP is doing the steps, we've got them vicariously. If the city is doing some of the steps and the contract with the city indicates that perhaps that might be the case as well, it's okay. We've got Akamai. No matter what's happening in New Orleans, we've got them in New Jersey. Can I ask you, you said it's not the same activity in New Orleans versus New Jersey. What is that based on? Is it based on who's accused or is it based on, is the direct infringement the same in each of the two cases? If I said that, I misspoke. The activity, whatever's happening in New Orleans, for the New Orleans bucket of disinfringement allegations, it's the same for both cases. But the difference is that the New Jersey case, we don't know who's doing what steps of the process. We think that the city is involved with some steps, doing some steps, maybe the collection of the fine, collection of the deposit. Pam is doing other steps. In fact, that's what our investigation showed. And SP is doing maybe other steps. That's what we think. And our investigation showed that it's not just SP. So the case in New Jersey, because it's against Pam, no matter what's happening, we've got it covered. But if you look at the case in New Orleans, with just SP as the infringement defendant, unless SP is doing every single step of the process, if they're not doing every step of the process, then we don't have direct infringement. That entire case is a dead end because we can't address the infringement. So that's why the case in New Jersey... Well, what is the answer to that in the briefs? I'm a little confused. You could have brought the other party in as part of your contribution. Well, we could have, but all these cases that look at situations where you have two different cases, I mean, you could always say that. I mean, especially before T.C. Arlen, you could bring cases wherever you want. The way the courts look at it, including the Wilton Supreme Court case, you have these two cases. Look at the wise judicial administration. That's what the Supreme Court says. Which one makes the most sense to go ahead with? And here, if we go ahead with a case in New Orleans, there's a real distinct possibility, and I think a very strong possibility, that's going to get nowhere, because SP, we don't think, is doing all the steps of the process. And so we have no way to get them for infringement. But you didn't sue SP in New Jersey, right? So in New Jersey, you're left with the absence of a direct infringer for purposes of infringement, right? Yes, Your Honor, but it doesn't matter. We've still got somebody there who's responsible for the infringement, and the prime contractor, Pam. Okay. Do we all agree the abuse of discretion is the standard to apply here? Yes. Yes. Okay. And they filed first in New Orleans, right? They did. So where is the sufficient basis for us to say that the district court abused its discretion? We're talking about the preliminary injunction, not right? Yes. Yes, Your Honor. Well, really, they're very closely related, but the abuse of discretion comes in at least three areas. You have an abuse of discretion in two areas of law. The first one was the district court telling us that we had to sue Pam, we must sue Pam in New Orleans as a compulsory counterclaim. That was just legally wrong. Rule 13 just doesn't allow that. The second abuse of discretion is saying that Pam is a required party under Rule 19. And those two, of course, combine for the district court to tell us we must sue Pam there, so that was a legal error. That's an abuse of discretion. And then there's also an abuse of discretion in that a clear error of judgment in the district court not recognizing this difference between these two cases and their scope, because only the New Jersey case is going to definitely resolve the infringement in New Orleans. If SP is not doing all those steps in New Orleans, it's a complete dead end. That case is a dead end, because no matter what happens, we haven't got a case for infringement down there. What was the status? The New Jersey judge mentioned counterclaiming against Pam. Isn't Pam now before the... Well, weren't they before the New Orleans court? Pam is now before the New Orleans court, Your Honor, and the reason that happened is because in this order that's under review, the district court said that if we have a claim against Pam, we must, and this is the district court's word, twice, and they emphasized the word must, you must sue Pam in New Orleans. So at that time, what I'm facing is two things. I have a federal judge who just told me that if I have a claim against Pam, I must sue them as a compulsory counterclaim in New Orleans, and I'm also facing a deadline. I have a deadline to add counterclaims. So I have to do that. I have to do that. I can't take that chance that I'm gonna lose a claim against pay luck. I had to sue them in New Orleans. There was no other choice. So that's the only reason that Pam's down there. It's because of the error of law that the judge made in New Orleans saying that it was a compulsory counterclaim. It's clearly not. Before your time runs out, can I just ask you a logistical question, which is we've got the next appeal coming up on 101. If we were to conclude that there was merit or we agree with the district court judge, or at least we would affirm the district court judge on the 101 and validity assertion, then effectively this case is mooted out. Am I right? If the conclusion is, I'm looking forward to the next argument, but if the conclusion is that it's 101 and valid, I guess it really doesn't matter what court we're in. I would just footnote that and that I know it's statistically unlikely, but just in case we go up to the Supreme Court, in that case, it might become important. But you're right, if the patents are invalid, it doesn't matter really what court we're in. Okay, I appreciate that. So I talked briefly about the first bucket in New Orleans. There's also another bucket here, and that's... Our client is in this business. We know who our competitors are. We chose Pam. Pam's always been our target. And the reason is because we think they're out there doing this. And it's not just New Orleans. The New Jersey action will catch anything else that Pam is doing. We know that Pam is out there. We know that Pam is in these other municipalities seeking auto related debt collection activities. We know that... That's kind of thin, right? In terms of knowing... We know what's going on in New Orleans. Yes. Because they're acting on this, it's under the contract, you've got the government, you've got various parties that are involved, and then you're representing that we know there's something more going on out there. It's a little thin, right? I was very candid in our briefing to this before and here that we do not have conclusive evidence. What we have is... We know they're out there working with other municipalities, not necessarily self release booting. We have the Wendler Declaration that they submitted. And even Mr. Wendler's declaration... Yeah, but we don't know... For all we know, that could be happening in California then, and that might become the more appropriate venue for further action rather than New Jersey. So even if we give some credence to the fact that you know that they're out there doing stuff, why does that get you to New Jersey? Because New Jersey solves them all. What we don't want, Your Honors, we don't want 10 different litigations across the country against 10 different subcontractors. The litigation in New Jersey will solve them all because Pam is the primary contractor. And in New Jersey, we have it, we have it covered. And one just quick point, I have 45 seconds, but you say it sounds thin, Your Honor, but there's at least some circumstantial evidence of this. I'll point out that we all know an offer for sale is an infringement. So we've asked, and we've asked, and we've asked. We put in our brief at the district court, we raise it at the district court, we put in our brief. Will they even acknowledge that question? I mean, they put in declarations in response to this motion and they won't even acknowledge the question. Now, does that mean conclusively that they're doing this offering somewhere else? No. But you will be able to ascertain that information and the new rule means proceeding, now that you've brought them in as a primary contractor. I will not, Your Honor. If only SP is down there, unless Pam is a... Unless the district court was right in ordering us to do that, I will not. It will only be SP. I can't pursue infringement against Pam and other municipalities down there. If it's only SP that's down there, I don't think I can do that. Wait a minute, you just said unless the district court was right in insisting. But you have, as a practical matter, brought in Pam now. Yes. Yes, Your Honor. Only against our, over our objection. Right. We did place an objection. We don't think we have to do this. It's wrong. But now Pam's down there. But if Pam wasn't down there, and Pam's not a party, I don't think we can pursue other infringements by Pam in other municipalities because without Pam being a party. So we'd have to go through this case. Okay. Why don't we reserve the remaining time? Okay. Thank you. Good morning, Your Honor. May it please the court. Chris Ralston and Lindsay Calhoun on behalf of SP Plus Corporation. The court has already identified, and the standard is an abuse of discretion standard. And the court has already asked some of the questions that were raised by us, and certainly addressed, I think, by the district court below. I heard one new argument this morning that we didn't hear at the district court. But the rest were addressed. And I'll just, I guess, go through some of the analysis in terms of the Genentech decision has certainly selled, and I believe, Your Honor, authored that decision, that a district court can enjoin a later filed or a second filed action, which is what happened here. It's important to remember that, although I've heard counsel's arguments here and at the district court, there is no infringement in New Jersey. The only thing in New Jersey is where a pay lock is located. And that, I think, calls to mind decisions like the other Genentech decision, where this court held that it was not just an abuse of discretion, but it warranted a mandamus to correct the proceeding of a second filed action in California, when the only connection to California was that the defendant, or excuse me, the party claiming infringement had some of its personnel willing to attend, personnel located there. It's very, you know, when we look at this case, what do we have? We've got everything about both proceedings, everything about both proceedings, concerns, alleged infringement by the city of New Orleans through its contractor, Professional Account Management, and its subcontractor, SP Plus Corporation. I know that counsel made the argument that the district court didn't accept it. There has never been any question about who's performing the activities. We've been upfront about that. It's SP Plus Corporation through a subcontract with PAM, and that PAM has the contract with the city of New Orleans for the provision of parking related services. It's a case that if it were correct, or if it were true, that PAM is out there in various other municipalities nationwide trying to get contracts and use this on the assumption that you've got a valid and infringed patent. That would, you know, that wouldn't necessarily be covered in the New Orleans action. I mean, your friend is saying this is a nationwide issue and we have some reason to believe that there's more activity going on by PAM, which SP may or may not even be involved with, and New Orleans may or may not even be involved with. They have said that, Judge, despite all the evidence to the contrary, despite written declarations and affidavits saying, and there is no other activity, I mean, everyone's been unequivocal about that. The only place that certainly that SP Plus offers this self-releasing of the alleged infringing activity is in New Orleans because the city of New Orleans asked us to do so. And PAM, Professional Account Management, has also been unequivocal that it is performing that service by contract or otherwise nowhere else in the country or the world. You're saying the subcontractor is operating only in New Orleans. Well, my client, the subcontractor is operating nationwide, but the only place, the only place that we're offering the alleged infringing activity is in New Orleans. But you're saying that the contractor as well, the only place that . . . That's absolutely true, Judge. Absolutely. No question about that. And the district judge heard that too. But I heard the hypothetical that Your Honor posed and I wanted to address that. I mean, sure, there has been that statement, but it's in the face of everything to the contrary. And, you know, I'm sure the court noticed, because it's been clear that the panel is well-prepared today, that Paylock, IPT, issued a public records request to New Orleans to find out all the details about what was being provided and certainly knows how to do that in other municipalities, if they had any real belief that this infringing activity was being offered anywhere except for New Orleans. And to date, there has been no allegation other than just an allegation it could be happening somewhere else. That's in the face of clear and unequivocal statements by SP Plus Corporation and PAM, Professional Account Management, that neither are performing it anywhere, period, except for New Orleans. And we've been up front about that from the very beginning. In fact, when we filed the lawsuit in the Eastern District of Louisiana, SP Plus, my client, we said, we are performing this service in New Orleans pursuant to a subcontract in connection with a contract through Professional Account Management with the City of New Orleans. And so there was no doubt about that. There was some statement made again this morning at the district court that we denied that we were, you know, providing the activities. That's never been the case. And I think Judge Feldman recognized that. There was no reason for us to say that. When we walked into federal court and filed our complaint saying, we are performing all of these activities in New Orleans pursuant to a subcontract. And so I just want to address the hypothetical that Your Honor posed. But I do think that the district court addressed that below. And I think, you know, the documents belie any belief that there's any service being performed. This is all about venue. And I don't think there's any real question. But even if there was a question, Your Honor, on whether this is being performed somewhere else, I think this court has addressed that type of situation in Micron Technologies versus Mosaic Technologies. I mean, that was the whole point that if we allow someone to get past the first filed rule, which this court steadfastly follows, then we allow someone to manipulate it by saying that there's something more or leaving out a party as they did in this case or adding someone else in to say, well, this lawsuit is really different. So the second filed action should proceed. And I think this court has been consistent and uniform in saying that they're not going to not going to allow that type of manipulation, even if there's no manipulation here. The point is, OK, let me just move you on. The difficult, the more difficult issue for me, at least, is that Pam was not a party. And maybe, maybe the answer is, well, you can't unring the bell because your friend, whether he felt coerced to bring Pam in or not, felt like after the die had been cast, he brought them in. So it's no longer a problem. So maybe the answer is, well, it's no longer a problem. We're not going to unring that bell on an abuse of discretion standard. But what's your view of that question? Thank you, Your Honor. I will address just so that there's no confusion and hopefully this addresses your question. First, the district court did not say that that Paylock must sue Pam in New York. I think that the district court addressed that in its March ruling, Appendix 41, where it correctly wrote that the Paylock certainly, quote, certainly could add Pam as a third party defendant. And in response to Paylock's fervent arguments to the contrary, the court further elaborated that if Paylock really believed in its own, quote, mothership theory, that is, if it believed that a lawsuit against SP Plus would not afford complete relief against Pam's nationwide infringement, then it had to assert claims against Pam. And so I believe, Your Honor, in answering your question, that when everyone's been clear that Pam is only a party to this and we're stepping up through an indemnity agreement, that it really doesn't matter whether Paylock decided to bring in Pam or not. It did. It did. It's because the district court said it certainly could and federal rules say it could. But it doesn't alter the analysis that when we've said that we're performing the services, it's not going to cause any prejudice or certainly no abuse of discretion in this case by the district court, by the simple fact that Pam wasn't initially in the suit filed in the Eastern District of Louisiana. I hope that answers Your Honor's question. But that is how it happened. When we filed the suit, we didn't bring in Pam because, as SP Plus said, we're performing the services. We are performing the services pursuant to a subcontract through the contract with the city. Just because you have an indemnity agreement with Pam, that doesn't, how is that even probative? I mean, if Pam is a necessary party, just because you have the obligation to indemnify them, doesn't mean... Absolutely, Your Honor. And I didn't, I'm sorry, I didn't mean to interrupt, and I didn't mean that it's legally significant. I was just explaining how we got here, you know, because I think this may be a little unusual. I don't think it changes the result. It is unusual. But the point of it was just, I wanted to explain how we got here and the reason why we brought the action, because there was no question that we were performing it. And so we teed up the issue and brought it to the district court so we could get a speedy determination. Because, of course, we've got a cease and desist letter and a lot of other threats that we were dealing with at the time. And so that's why we brought it. And frankly, I was a little surprised that there would be an objection to proceeding in New Orleans, where all of the alleged infringing activity is occurring by the City of New Orleans. And the district court addressed the issue about the City of New Orleans isn't going to send its employees to New Jersey. That's not something that they're going to do. And I know the court saw that the affidavit and the record on that from the city head of public works. But those are the issues the district court considered in considering where is the appropriate place for the action to proceed, the place where the infringing activity is occurring, where Pam has certainly raised no objection to proceeding in New Orleans. We're located in New Orleans in terms of having employees there. And so when you look at the personnel, the activity, the questions that would be at issue in any suit, we were honestly surprised that there'd be an objection proceeding in the city when the city is being the alleged infringer. And so I think that that makes this really an easy one under whichever standard the court looks at. And certainly when we look at this court's precedence on the record, that's been a rule that's been followed. And certainly I think clearly the case here when the only connection to New Jersey, the only connection is that Paylock would prefer to proceed there. And that, under this court's precedent, is not enough to transform this into an error, much less an abuse of discretion. I think when we look at this court's holdings, and I cited my crime technology, we've cited in our brief and others, that it really becomes straightforward. We look at the 1404 factors. We tried to outline those for the courts here. I believe Judge Feldman went through the analysis fairly thoroughly in terms of where are the employees? Where would the witnesses be located? Where would the documents be located? Where is the alleged infringing activity itself occurring? Every single point is in New Orleans. And there was no reason that the court couldn't exercise jurisdiction, which it has been told that it should do. And so when we look at the authorities from this court that say that an injunction is certainly appropriate against a second filed action, when the only connection to the second file proceeding is that the party claiming infringement would prefer to proceed there, that it's not only not error, but it was consistent with this court's authorities to issue the injunction, which it did in following this. But that wasn't your declaratory option based on validity rather than non-infringement? I'm sorry, Your Honor. I, the, the Louisiana action, wasn't that requesting a declaration of invalidity rather than a declaration of non-infringement? It did assert non-validity. And therefore, why is it irrelevant where the inventors and the invention and all of the evidence and testimony as to validity, where that was located? I'm sorry, Judge. I'm not going to say it's irrelevant. And we did claim invalidity. You can't say it's irrelevant. Right. And I don't think I, if I did, I apologize. I don't think it's irrelevant. My point was it went under the analysis of the factors in the courts and what this court has said in terms of... Well, all you talked about was infringement. Right. And, and we were alleged... Infringement I don't think was even disputed, was it? We, we did dispute infringement, Judge. But we also said that there was a validity question. Just to be clear, because I don't, the, your action involved both infringement and validity? The primary claim was... Non-infringement. Was, was that the patents were invalid. But we also don't concede that there's been infringement. And so, and that's certainly, we're talking about the New Jersey action. Sorry to interrupt you, but you said you didn't concede infringement. Is, I'm sorry, I'm confused. Are you saying that it was based on a request for a declaration of non-infringement, or simply that you weren't conceding infringement? We, we, we asked for a declaration of invalidity, Your Honor. Only invalidity? In, in, in New Orleans, in the Eastern District of Louisiana. So, and so my, my point was not that it's irrelevant, but, but when the, the, the claim has been brought pursuant to the, the whole infringement allegation, and our defense, our response is that the patents are invalid. That by, by bringing it there, it was not only improper, it was consistent with this court's authority for the court to defer, or to order the party to proceed in the first filed action. And that was, I believe, consistent with what this court said in Micron Technologies, and in Genentech, and the other authorities that we, we asserted for the, asserted in our brief. Thank you. Thank you, Judge. Any, we would ask the court to affirm on that point. Thank you. I'll just be brief on a few points. Your Honor, you asked about whether PAM should have been brought in in the first instance by SP in New Orleans, and absolutely yes. This, this would be a very different appeal had that happened, because then the, the New Orleans case would have been able to solve whatever's happening with PAM, but they didn't do that, and so now the only case that can really handle everything is the one in New Jersey, where PAM is properly partied, and you're right, Your Honor, this is, this is definitely not a traditional first to file case. SP is just a peripheral defendant. It's not the primary contractor. So this is, the 1404 analysis and the transfer, I get that when you have mirror image cases. You have the DJ action, and you have the infringement action, but that doesn't make sense here, where you have different parties, and the scope of the cases are different. In this situation, we follow Wilton under the United States Supreme Court, wise judicial administration. So moving to that issue, Mr. Raulston said there's not really any dispute that SP is doing all the, all the acts in New Orleans. Well, there is. Appendix at 189, this is our first letter. This is long before any of this ever happened. Long before any of these motions or any case in New Orleans, we did an investigation showed the pay and the release of the boots. Those are two steps in our claims. You have to do them to meet our claims. The pay and release of the boot, and you got a number. You call that number. It's not SP, it's PAM. So if that's correct, and the case against SP in New Orleans can't address the infringement. We don't have a direct infringement case against SP. They don't have a contract with the city. There's no direct infringement. And that whole New Orleans action is just a dead end for infringement. It's going nowhere because the evidence is that SP is not doing everything. The New Jersey case can handle it no matter what's happening. Lastly, the national infringement, we talked about that. I encourage you honors to look at the Wendler declaration. He, this is their declaration. He expressly says, cannot rule out the fact that we've used these other boots elsewhere. So with that, I'm done. If there are no further questions. Thank you. Next.